**SO ORDERED.**

**SIGNED this 09 day of January, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

PAK-A-SAK FOOD STORES, INC.

        Debtor.                                    Case No. 06-04078-8-JRL

_____

### ORDER

This matter is before the court on the application of creditor SummitBridge National Investments, LLC (SummitBridge) for payment of fees and expenses pursuant to 11 U.S.C. § 506(b). On December 13, 2007, the court conducted a hearing on the matter in Raleigh, North Carolina.

### BACKGROUND

The debtor, Pak-a-Sak Food Stores, Inc. (Pak-a-Sak), filed a Chapter 11 bankruptcy petition on December 13, 2006. As of the petition date, Pak-a-Sak was indebted to SummitBridge pursuant to the following obligations: (1) a promissory note dated October 29, 2004 in the original amount of $3,339,662.97, made payable to Branch Banking and Trust Company (BB&T) and assigned to SummitBridge on June 30, 2006 (the Note); (2) a loan agreement dated October 29, 2004 by and among Pak-a-Sak, BB&T, George P. Phillips, Sr.,

Willis Jackson Phillips, and PS, LLC, which was assigned to SummitBridge (the Loan Agreement); and (3) a guaranty dated November 17, 1999 from Pak-a-Sak for the benefit of BB&T, which was assigned to SummitBridge on June 30, 2006 pursuant to which Pak-a-Sak guaranteed all obligations owed by PS, LLC (the Guaranty) (collectively "the obligations"). The obligations each contain provisions by which the debtor agrees to pay all costs of collection, including "reasonable" attorneys' fees. The law firm of Helms, Mulliss & Wicker PLLC (HMW) represented SummitBridge in this matter.

It is undisputed that SummitBridge is an oversecured creditor in this case. SummitBridge has a pre-petition claim of $1,961,585.64. The above listed obligations are secured by two deeds of trust of the debtor's real property and five security agreements on the debtor's personal property. On May 7, 2007, counsel for SummitBridge and Pak-a-Sak entered into a Joint Stipulation of Facts pursuant to which the parties agreed that the value of the real property was $3,596,000.00. Due to its status as an oversecured creditor, SummitBridge filed an application for "reasonable attorneys' fees and all costs of collection and enforcement" pursuant to 11 U.S.C. § 506(b) and N.C. Gen. Stat. § 6-21.2. In the application, SummitBridge seeks $175,153.50 in attorneys' fees for 553.10 hours of services and $42,195.46 in expenses and costs.

In connection with this bankruptcy case, HMW members billed a total of 198.9 hours, HMW associates billed a total of 327.2 hours, and HMW support staff billed a total of 27 hours.[1] Of these, $33,204.00 in attorneys' fees, representing 109.60 hours of services, were incurred pre-

---

[1] The hourly rates for these services vary depending on whether the service rendered took place during the calendar year 2006 or 2007.

petition. The following hourly rates were charged for HMW services:

| | |
|---|---|
| Robert H. Pryor (member) | $435.00 (2006); $450.00 (2007) |
| Scott P. Vaughn (member) | $405.00 (2006); $435.00 (2007) |
| Sheldon M. Francis (associate) | $305.00 (2006/2007) |
| Jennifer Rouse Leahy (associate) | $265.00 (2006); $300.00 (2007) |
| Shannon E. Hoff (associate) | $225.00 (2006); $250.00 (2007) |
| Julia R. Wicker (associate) | $220.00 (2007) |
| Kim Harsey (paralegal) | $165.00 (2006/2007) |
| David Gomez (IT department) | $150.00 (2007) |

SummitBridge asserts that the fees assessed by HMW in this matter are reasonable and that the services rendered were necessary and valuable legal services for SummitBridge. SummitBridge asserts that HMW performed the following services in connection with this case: (1) assisting with the pre-petition negotiated sale of certain of the debtor's real estate; (2) initiating pre-petition foreclosure proceedings; (3) negotiating with respect to the debtor's use of cash collateral; (4) preparing objections to the debtor's disclosure statement and plan of reorganization; (5) negotiating with debtor's counsel regarding the plan of reorganization; and (6) preparing for and attending a contested confirmation hearing. SummitBridge argues that it was sometimes necessary, due to the number of contested issues and amount of negotiating that was required to work through the issues, for multiple HMW attorneys to have interoffice conferences, participate in telephone conferences, and attend the confirmation hearings.

The debtor objects to the claim of SummitBridge for attorneys' fees and costs incurred in connection with this bankruptcy case. Specifically, the debtor alleges that the attorneys' fees are not reasonable because SummitBridge (1) engaged in unnecessary litigation; (2) incurred costs in excess of $33,000.00 for an expert witness; (3) kept timekeeping records containing substantial amounts of grouping and lumping of entries; (4) used multiple attorneys in performing certain services; and (5) charged hourly rates that the debtor asserts are unreasonable for the issues

3

involved in this case. The debtor therefore requests that the court find the fees and expenses requested by SummitBridge to be unreasonable and that any amount the court finds to be unreasonable be disallowed in its entirety.

## ANALYSIS

### 1. Attorney's Fees as Part of the Secured Claim Under 11 U.S.C. § 506(b)

Section 506(b) of the Bankruptcy Code gives oversecured creditors the right to seek reimbursement for "*reasonable* fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). To sustain a claim for fees pursuant to this section, a creditor must demonstrate the following: (1) that the creditor has an allowed secured claim; (2) that the creditor is oversecured; (3) that the agreement upon which the creditor's secured claim is based provides for the recovery of the fees and costs; and (4) the fees and costs are reasonable. See, e.g., In re California Prop. No. 1, Ltd., 132 B.R. 191, 192 (Bankr. M.D. Ala. 1991). It is undisputed that SummitBridge has an allowed secured claim of $1,961,585.64 and that SummitBridge is an oversecured creditor. Therefore, the only issues that must be decided are what fees are recoverable pursuant to the terms of the obligations and whether those fees are reasonable under relevant law.

    a. *Attorneys' Fees Provided for in Obligations*

In the instant case, the obligations provide that the debtor will reimburse SummitBridge for all costs and expenses of collection including, but not limited to, reasonable attorneys' fees. Specifically, the agreements contain the following provisions that are relevant to this matter: (1) the Note provision that the debtor agrees to pay "all costs of collection, including but not limited to reasonable attorneys' fees;" (2) the Loan Agreement provision that the debtor agrees to pay

4

"the reasonable attorneys' fees . . . and all related costs of collection or enforcement that may be incurred . . .;" and (3) the Guaranty provision that the debtor "shall be responsible for and shall reimburse [SummitBridge] for all costs and expenses (including reasonable attorneys' fees) incurred" in connection with the enforcement of the Guaranty.

In North Carolina, the validity of a contractual obligation to pay attorneys' fees and costs is subject to the requirements of North Carolina General Statute § 6-21.2. That provision reads, in relevant part:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:
>
> (1) If such note, conditional sale contract or other evidence of indebtedness provides for attorneys' fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent ( 15%) of said "outstanding balance" owing on said note, contract or other evidence of indebtedness.
>
> (2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

N.C. Gen. Stat. § 6-21.2. The North Carolina Supreme Court has defined "other evidence of indebtedness" to mean "any printed or written instrument, signed, or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money." Stillwell Enters., Inc. v. Interstate Equip. Co., 300 N.C. 286, 294, 266 S.E.2d 812, 817 (1980). Fees for actions which are reasonably related to collection, such as bankruptcy, foreclosure, and

receivership actions, may be properly awarded under § 6-21.2. See Coastal Prod. Credit Assoc. v. Goodson Farms, Inc., 70 N.C. App. 221, 227-28, 319 S.E.2d 650, 655-56 (1984).

This court has routinely found that secured creditors' attorneys' fees must be "reasonable" in order to be collected under North Carolina General Statute § 6-21.2. See, e.g., Benneco, Inc. v. Branch Bank & Trust Co. (In re Benneco), No. 98-00501-8-JRL (Bankr. E.D.N.C. 1999); In re Eclipse Props., LLC, No. 04-0151505-ATS (Bankr. E.D.N.C. Oct. 22, 2004). However, a closer reading of the statute and relevant case law indicates that the law is more nuanced and depends on the language of the underlying agreement in each case. See, e.g., Jennings Comm'n Corp. v. PCG of the Golden Strand, Inc., 126 N.C. App. 637, 486 S.E.2d 229 (1997). Specifically, if an agreement provides that the amount of attorneys' fees is based on a specific percentage of the outstanding balance of the obligation, then § 6-21.2(1) applies and the award of attorneys' fees must be supported by evidence of reasonableness and may not exceed fifteen percent of the outstanding balance. See, e.g., West End III Ltd. Partners v. Lamb, 102 N.C. App. 458, 402 S.E.2d 472, disc. rev. denied, 329 N.C. 506, 407 S.E.2d 857 (1991). However, if the agreement only calls for payment of "reasonable attorneys' fees" rather than a specific percentage of the outstanding balance of the obligation, then § 6-21.2(2) applies, which states that "reasonable" is construed to mean fifteen percent of the outstanding balance. Therefore, while an award of attorneys' fees under subsection (1) must be supported by evidence and findings of fact showing reasonableness of the award, "subsection (2) has predetermined that 15% is a reasonable amount." Trull v. Cent. Carolina Bank & Trust, 124 N.C. App. 486, 493-94, 478, S.E.2d 39, 44 (1996). Numerous North Carolina cases have interpreted the statute in this manner. See Spencer v. Hutchens, 2006 U.S. Dist. LEXIS 83784 at *2 (M.D.N.C. Nov. 16,

2006); Fed. Fin. Co. v. Poole, 1996 U.S. Dist. LEXIS 4892 (E.D.N.C. March 29, 1996); Devereux Props., Inc. v. BBM & W, Inc., 114 N.C. App. 621, 626, 442 S.E.2d 555, 558, disc. rev. denied, 337 N.C. 690, 448 S.E.2d 519 (1994); R.C. Assocs. v. Regency, 111 N.C. App. 367, 373, 432 S.E.2d 394, 397 (1993).

Here, the provisions of the Note, Loan Agreement, and Guaranty fall within the purview of § 6-21 as notes or "other evidence of indebtedness" as defined by the North Carolina Supreme Court. The obligations each call for SummitBridge to collect from the debtor "reasonable" attorneys' fees and costs, rather than specifying a percentage of the outstanding balance to be collected as attorneys' fees. Therefore, the provisions of § 6-21.2(2), rather than § 21.2(1), apply. Under § 6-21.2(2), a provision calling for payment of reasonable attorneys' fees is construed to mean fifteen percent of the outstanding balance of the agreement. In its application for fees and expenses, SummitBridge requests $175,153.50 in attorneys' fees, which is less than fifteen percent of the outstanding balance of the underlying agreements. Therefore, the court need not make a factual finding that the "reasonableness" provisions of the obligations are met because the fees requested by SummitBridge are deemed reasonable pursuant to § 6-21.2(2). This finding is not inconsistent with the court's holdings in Benneco and Eclipse Properties, where the agreements stated a specific percentage of the balance reimbursable as costs of collection.

>b. *Reasonableness of Fees and Expenses Under Federal Law*

In order to determine the reasonableness of attorneys' fees for purposes of § 506(b), the Fourth Circuit looks to the "lodestar" factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1985). See Harmon v. Levin, 772 F.2d 1150 (4th Cir. 1985).

The "lodestar" factors are:

>(1) the time and labor required;
>(2) the novelty and difficulty of the questions raised;
>(3) the skill required to properly perform the legal services rendered;
>(4) the attorney's opportunity costs in pressing the instant litigation;
>(5) the customary fee charged for like work;
>(6) they attorney's expectations at the outset of the litigation;
>(7) the time limitations imposed by the client or the circumstances;
>(8) the amount in controversy and the results obtained;
>(9) the experience, reputation, and ability of the attorney
>(10) the undesirability of the case
>(11) the nature and length of the professional relationship between the attorney and the client, and
>(12) attorney fee awards in similar cases.

Id. at 1152 n. 1.

The debtor argues that the fees sought by SummitBridge pursuant to the agreement are unreasonable based on the lodestar factors because the attorneys spent an unreasonable amount of time engaging in matters in connection with the bankruptcy case, particularly in light of SummitBridge's position as an oversecured creditor. Specifically, the debtor asserts that, because SummitBridge is an oversecured creditor, the only real issues in this case were the time in which the debtor would be required to pay SummitBridge and the market rate of interest to be used. The debtor argues that these are standard issues presented in Chapter 11 cases, and that no special skill is required that would justify the fees charged by HMW attorneys. For example, the debtor cites the following time entries by HMW attorneys as unreasonable:

>(1) approximately 55.2 hours preparing SummitBridge's objection to the debtor's plan and preparing a brief in opposition to confirmation of the debtor's proposed plan of reorganization;
>
>(2) approximately 125.5 hours preparing for and attending hearings opposing confirmation of the debtor's plan;

      (3) approximately 21.30 hours researching and preparing a brief in support of SummitBridge's motion for a protective order;

      (4) approximately 20.30 hours preparing and researching a motion to disqualify the debtor's counsel;

      (5) approximately 19.10 hours engaging in interoffice conferences and conferences with SummitBridge representatives;

      (6) approximately 3.6 hours preparing a proof of claim; and

      (7) approximately 1.1 hours of information technology work.

      Based on the court's review of the time entries submitted by HMW and in light of the enumerated lodestar factors, the court finds that the time spent and fees charged by HMW attorneys on matters related to this bankruptcy case are reasonable. First, the services performed by HMW were necessary to protect SummitBridge's interests in this bankruptcy case, particularly in light of the fact that this was the debtor's second filing in four years and was necessitated by its inability to meet the obligations of its first confirmed plan. Although SummitBridge is a secured creditor of the debtor, SummitBridge and HMW acted reasonably in spending a considerable amount of time objecting to the debtor's proposed plan of reorganization. As initially proposed, the time set forth for payment of SummitBridge's claim had a significant adverse impact on SummitBridge's interests as a secured creditor. Therefore, it was necessary for SummitBridge to either object to the debtor's proposed plan or accept treatment that it did not believe met the requirements of the Bankruptcy Code. At the hearing, SummitBridge presented the testimony of A. Lee Hogewood, a bankruptcy attorney from Kennedy Covington Lobdell & Hickman, LLP (Kennedy Covington), a law firm that handles work similar to that performed by HMW attorneys. Mr. Hodgewood testified that the services

performed by HMW in connection with this bankruptcy case are in line with the treatment the case would have received from attorneys at Kennedy Covington. Second, the fees charged by HMW are customary for like work and are consistent with fees charged in similar cases. At the hearing, Mr. Hogewood testified that the fees charged by HMW attorneys are similar to those charged by attorneys with comparable experience at Kennedy Covington. This court is of the belief that quality, experienced attorneys should be compensated for their services. The mere fact that the case is in bankruptcy court should not mandate that attorneys receive lower fees than attorneys charge for comparable non-bankruptcy litigation. Therefore, the court finds that the attorneys' fees requested by SummitBridge are reasonable under the Fourth Circuit's enumerated lodestar factors, and are thus allowed as part of the secured claim pursuant to 11 U.S.C. § 506(b). This conclusion is further buttressed by the court's conclusion that the fees are deemed reasonable under North Carolina law. The plan in this case requires full payment of all creditors. Fees disallowed as reasonable under § 506(b) would still be part of SummitBridge's unsecured claim that would be required to be paid in full. See In re Gencarelli, 501 F.3d 1 (1st Cir. 2007). SummitBridge has sought to add the fees to its secured claim and it is likely in the debtor's interest that they be treated in this fashion, rather than as part of the unsecured claim.

**2. Expenses and Costs as Part of the Secured Claim Under 11 U.S.C. § 506(b)**

In addition to attorneys' fees, SummitBridge has requested that the court approve payment of $42,195.46 in costs and expenses. This request includes $8,414.16 in routine expenses such as filing, copying, research and travel fees. The court finds that such expenses are sufficiently itemized and are reasonable costs of collection which can be added to the secured claim pursuant to the provisions of the underlying agreements and 11 U.S.C. § 506(b). The court

10

does, however, take issue with the $33,781.83 in expert witness fees requested by SummitBridge.

As a general rule, 11 U.S.C. § 506(b) allows oversecured creditors to seek *reasonable* fees and costs to be added to their allowed secured claim. 11 U.S.C. § 506(b). In connection with this provision, the court presumes that the term "costs" is given its traditional meaning in litigation. Specifically, 28 U.S.C. § 1920 states that:

> [A] judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1928 of this title.

Pursuant to this provision, courts generally only tax a narrow amount of the prevailing party's expert witness fees to the other party. See 28 U.S.C. § 1821 (stating that "[a] witness shall be paid an attendance fee of $ 40 per day for each day's attendance). Courts have generally held that reimbursement of expert witness fees awarded pursuant to 28 U.S.C. § 1920 are limited to the statutory witness fees set forth in § 1821, absent extraordinary or exceptional circumstances. See, e.g., Davis v. Richmond, Fredericksburg & Potomac R. Co., 803 F.2d 1322, 1328 (4th Cir. 1986); Peterson v. Airline Pilots Assocs., 1987 U.S. Dist. LEXIS 14165 (M.D.N.C. Feb. 4, 1987). However, the United States Supreme Court has articulated an exception to the limitations of §§ 1821 and 1920 as applied to expert witness fees where there is an "explicit statutory or

contractual authorization for the taxation of the expenses of a litigant's witness as costs." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987).  Therefore, when the plain language of the underlying agreement indicates that the prevailing party should recover all costs, 28 U.S.C. §§ 1821 and 1920 do not control.  Id.; see also Hobson v. Orthodontic Ctrs. of Am., Inc., 220 Fed. Appx. 490, 2007 U.S. App. LEXIS 2202 (9th Cir. Jan. 29, 2007).

In the instant case, the language of the obligations underlying SummitBridge's secured claim clearly go beyond the mere assessment of attorneys' fees to include all costs of collection. Therefore, pursuant to the Supreme Court's ruling in Crawford Fitting, this language removes the request for reimbursement for expert witness fees from the confines of 28 U.S.C. §§ 1821 and 1920.  However, to be allowed, the expenses requested by SummitBridge must meet the reasonableness requirements of 11 U.S.C § 506(b) by looking to the "lodestar" factors set forth above.  See Harmon v. Levin, 772 F.2d 1150 (4th Cir. 1985).  Here, the court was merely presented with a $33,781.83 fee for an expert witness hired by SummitBridge regarding the applicable market rate of interest to be used under 11 U.S.C. § 1129(b).  The expert testified on only one occasion and was deposed on another day.  The expert presented no detailed work product to illustrate his testimony that justifies an award in excess of $33,000.00.  In addition, the debtor's expert, who the court found to be more credible, received only approximately $10,000.00 for comparable services, according to the debtor's counsel.  Therefore, applying the criteria for reasonableness articulated in Harmon v. Levin, the court finds only $10,000.00 out of the requested expert witness fee of $33,781.83 to be reasonable and for which the debtor must reimburse SummitBridge.  Thus, the court awards SummitBridge expenses in the amount of $18,413.63 as part of its secured claim, which represents the expenses requested by

SummitBridge in its fee application, minus the portion of the expert witness fee disallowed by this court as unreasonable pursuant to 11 U.S.C. § 506(b).

**3.  Treatment of Expenses Deemed Unreasonable Under Lodestar Analysis**

The final matter to be resolved is whether the portion of the expert witness fee disallowed by the court as unreasonable pursuant to 11 U.S.C. § 506(b) may be allowed as an unsecured claim under 11 U.S.C. § 502.  SummitBridge asserts that any fees or expenses that the court deems unreasonable should be treated as an unsecured claim and be paid in accordance with the terms of the debtor's plan of reorganization.  However, the court need not address this argument because the court does not find that the agreements underlying the debtor's obligations support the payment of expert witness fees in excess of $10,000.00 as part of costs of collection.

It is well settled that parties to a contract have a duty to act reasonably in carrying out the terms of a contract.  See, e.g., MCI Constructors, Inc. v. Hazen & Sawyer, 401 F. Supp. 2d 504 (M.D.N.C. 2005); Wilder v. Squires, 68 N.C. App. 310 (1984); Mezzanotte v. Freeland, 20 N.C. App. 11, 17 (1973).  "The purpose of implying the reasonableness provision is to place a limit on . . . otherwise unbounded discretion."  MCI Constructors, 401 F. Supp. 2d at 510.  In the instant case, the obligations stated that the debtor would be required to reimburse SummitBridge for all costs of collection.  Reading this provision together with the duty to act reasonably that is implied into every contract, the contract only covers reasonable costs of collection.  A contrary reading would allow parties to turn such contract provisions into blank checks to incur fees and costs at the expense of debtors.  Therefore, the contract provisions requiring the debtor to reimburse SummitBridge for all costs of collection are construed to mean all *reasonable* costs of collection.  In the context of the expert witness fee, the court determines that $10,000.00 is a

13

reasonable cost of collection. Because SummitBridge is not entitled to expert witness fees in excess of $10,000.00 based on the underlying agreement nor any provision of North Carolina law, the court disallows the balance of the expenses in its entirety.

## CONCLUSION

Based on the foregoing, the court APPROVES SummitBridge's motion in part as to the request for reasonable attorneys' fees in the amount of $175,153.50 and reasonable costs and expenses in the amount of $18,413.63. The court DENIES SummitBridge's motion in part as to the $23,781.83 in expert witness fees that the court deems unreasonable under the lodestar analysis articulated in Harmon v. Levin and under North Carolina law.

**"END OF DOCUMENT"**